UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID L. REID,
MICHAEL PALMERI, and
DAVID RICOTTA

                          Plaintiffs,

v.

COUNTY OF ERIE,

                          Defendant.
_____

**DECISION and ORDER**

15-CV-1078(JJM)

The parties have consented to proceed before a Magistrate Judge [35].[1] Before the court is the motion of defendant County of Erie for summary judgment [23]. Having carefully reviewed the parties' submissions [23-26, 30, 33] and heard oral argument on September 8, 2017 [34], the motion is granted in part and denied in part.

## BACKGROUND

The plaintiffs are employees of the County, who commenced this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.* Amended Complaint [9].[2] Plaintiff David Reid, an African American, alleges that the County discriminated against him because of his race and retaliated against him for his opposition to that discrimination. Id., ¶67. Plaintiffs Michael Palmeri and David Ricotta allege that the County retaliated against them for their participation in Reid's charge of discrimination. Id., ¶68.

---

[1]    Bracketed references are to the CM/ECF docket entries.

[2]    Plaintiffs refer to claims brought under the New York State Human Rights Law (plaintiffs' Memorandum of Law [30-15], p. 4), but none are asserted in the Amended Complaint [9].

## Facts Relevant to Reid's Claims

Reid was hired in 2012 by the County's Department of Public Works ("DPW"), and began working the evening shift (from 4:30 p.m. to 12:30 a.m.) as part of the cleaning crew that cleaned adjoining County buildings at 92 Franklin Street and 25 Delaware Avenue in the City of Buffalo, which housed a variety of offices, including the Erie County District Attorney. County's Statement of Material Facts [23-1], ¶¶1-4, 8. Although they were not directed to do so, Reid and his co-worker Brian Nielgowski started their cleaning work on the first floor of the building. Reid deposition transcript [30-3], p. 10 of 36. While the building cleared, Reid, a self-described "people person", would routinely exchange pleasantries and well wishes to those leaving the building. County's Statement of Material Facts [23-1], ¶16.

In March 2013, while Reid was still subject to a 26-week probationary period, Ronald Kaun, Reid's immediate supervisor, was contacted by Amy Hughes, the Chief of Administration for the District Attorney. County's Statement of Material Facts [23-1], ¶¶5, 7. Hughes informed Kaun that "some of her staff felt uncomfortable with [Reid]" and "asked why he was standing around [in the vestibule] at 4:30 every day". Kaun deposition transcript [24-2], pp. 10-11 of 25. Kaun then went and spoke with Reid, who testified that Kaun told him that Hughes "stated something to the fact that because of her position in the DA's office with the number of blacks and minorities prosecuted by that office, she feels uncomfortable". Reid deposition transcript [30-3], pp. 11-12 of 36.

Two additional similar complaints were made by Hughes to Kaun concerning Reid approximately one month later and in August 2013. Kaun deposition transcript [24-2], pp. 17, 19, 20 of 25; Reid deposition transcript [30-3], pp. 57, 93. Notwithstanding these verbal

complaints, no written complaint was ever filed by anyone against Reid. County's Reply Statement of Material Facts [33], ¶21.

Following this discussion, Reid privately spoke to plaintiff David Ricotta, a union steward. County's Statement of Material Facts [23-1], ¶25. He then filed an informal complaint with the County's Equal Employment Opportunity Office ("EEOO") on August 14, 2013, which detailed the three complaints which Hughes had made to Kaun [26-1], pp. 196-200 of 234.

After filing his informal complaint, Reid, Hughes, and Kaun were interviewed by EEOO employees Glenn Belton and Lynn Kolodziej on August 19, 22 and 23, 2013. County's Statement of Material Facts [23-1], ¶32; [26-1], p. 202 of 234. Reid testified that sometime after he filed his informal complaint, his nephew, David Petty, informed him that he was contacted by Belton, who urged him to convince Reid to drop the complaint against Hughes. Reid deposition transcript [30-3], pp. 17-18 of 36. He also testified that during his interview with Belton, Belton said "man, didn't I tell you to drop this". Id., p. 19 of 36.

On August 29, 2013, EEOO Director Jesse Burnette met with Reid, Kaun, and Daniel Rizzo, the Deputy Commissioner of the DPW. County's Statement of Material Facts [23-1], ¶34. Reid testified that "nothing about my complaint was . . . addressed [at the meeting]. The only concern they seemed to have was moving me." Reid's deposition transcript [30-3], p. 25 of 36. During that meeting, Burnette handed Reid a document identifying five women, other than Hughes, who had complained about him. County's Statement of Material Facts [23-1], ¶35; Reid deposition transcript [30-3], p. 21 of 36. Reid assured them that he was a team player and did not want anyone to feel uncomfortable in his presence. County's Statement of Material Facts [23-1], ¶37. Rizzo informed Reid that he would "get with [Kaun] in the next couple [of] . . . days and formulate a job change description for [him] and [Nielgowski] . . . . [T]hat was the

agreement". Reid's deposition transcript [30-3], p. 26 of 36. Based upon that agreement, plaintiff understood that "there would be an official notice of the job change to start on the third floor". Id., p. 29 of 36. The meeting concluded with everyone shaking hands. County's Statement of Material Facts [23-1], ¶40.

A day or so later, plaintiff told Kaun that "after further consideration, I am not comfortable with the way that meeting ended . . . because . . . nothing about that meeting protected me or answered my complaint". Reid deposition transcript [30-3], p. 33 of 36. Kaun told Reid to contact Burnette, but he failed to do so. Kaun deposition transcript [25-1], p. 5 of 20; Reid deposition transcript [30-3], p. 33 of 36. Reid continued his routine of starting his shift on the firstfloor. Consequently, Reid was directed to report to Rizzo's office with Palmeri, a union steward, on September 16, 2013. Id., ¶49. At that meeting, Rizzo told Reid that he was in violation of the directive given and agreed to during the August 29, 2013 meeting with Burnette. Id., ¶53. Rizzo presented Reid with a written warning for violating the County Employee Handbook by failing to follow the direction of a supervisor, leaving his work area during work hours without permission, and misuse of County time by loitering in hallways. [26-1], pp. 99-100 of 234. Notwithstanding this written warning, plaintiff was never demoted, docked pay or denied a promotion. County's Statement of Material Facts [23-1], ¶¶60-62.

Following the September 16, 2013 meeting, Palmeri testified that he had a discussion with Reid, Kaun and Nielgowski during which Reid told Kaun "you're protecting this racist bi*** because she said she doesn't like the fact that she prosecutes minorities and blacks in the office and that she felt uncomfortable", and Kaun responded "I know, but just stay out of sight . . . and this will be all fine". Palmeri deposition transcript [30-4], pp. 17-18 of 40. On October 18, 2013 Reid filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC"), alleging discrimination because of his race from March through September 16, 2013, and retaliation arising from his informal EEOO complaint. [26-1], pp. 190-91 of 234.

### Facts Relevant to Palmeri's and Ricotta's Retaliation Claims

On various dates from July through December 2013 Palmeri and Ricotta took sick leave, but their sick leave was not deducted and they were receiving full pay on those days, including a shift differential for working the evening shift. Hufford Affidavit [26-1], pp. 113-15 of 234, ¶¶46, 50, 54-55; County's Statement of Material Facts [23-1], ¶¶70-71. Ricotta testified that he brought these inaccuracies to the attention of his supervisor, Jim Moran, who showed "little interest in resolving the problem". Ricotta deposition transcript [30-5], p. 6 of 16. Palmeri testified that he too brought these issues to the attention of his supervisor, initially Kaun and then Moran. Palmeri deposition transcript [30-4], p. 105. Both Ricotta and Palmeri testified that they believed that there was a directive issued by the County that directed union workers to bring these issues only to the attention of supervisors and not to the payroll department. Ricotta deposition transcript [30-5], pp. 8-9 of 16.

This issue came to the forefront following a snowstorm that closed the County's building on January 7, 2014. As "essential personnel", they were required to still report to work on storm closure days. Hufford Affidavit [26-1], p. 110 of 234, ¶32. On that date, Ricotta and Palmeri reported sick. County's Statement of Material Facts [23-1], ¶72. The County alleges that several days later Kaun was informed by Mariann Ritchie, a County employee, that Ricotta told her that he was being paid for the snow day without taking leave time. Hufford Affidavit [26-1], p. 110 of 234, ¶33.

On January 10, 2014, Kaun conveyed his alleged conversation with Ritchie to Hufford, who discovered that although Ricotta had called in sick, he was still paid as if he reported to work that day due to "a glitch in the computer system", which she reported to Rizzo and others. Hufford Affidavit [26-1], pp. 110-111 of 234, ¶¶34, 36, 38-39. Hufford's investigation revealed that there were three evening shift employees, including Palmeri and Ricotta, who were receiving their normal pay on the days they reported sick. Id., ¶44.

On January 13, 2014 First Assistant County Attorney Michelle Parker informed Rizzo and Kaun that Palmeri and Ricotta would be accompanying Reid to an EEOC mediation on January 22, 2014 as witnesses. County's Statement of Material Facts [23-1 ], ¶97; [26-1], p. 104 of 234. Four days later, on January 17, 2014 DPW Commissioner John Lofreddo fired Palmeri and Ricotta, as well as a third individual, for failing to report their sick time. Hufford Affidavit [26-1], p. 118 of 234, ¶74; County's Statement of Material Facts [23-1], ¶88. Deputy Commissioner Rizzo, who recommended that Palmeri and Ricotta be suspended, rather than terminated, denies that Commissioner Loffredo knew anything about Reid's pending matter before the EEOC. Rizzo Affidavit [26-1], pp. 92-93 of 234, ¶¶68, 71. Palmeri and Ricotta grieved their terminations through the final arbitration stage, and the arbitrator ruled that they "did engage in misconduct for which discipline was justified, but that the termination was excessive". [26-1], pp. 158, 169 of 234.

## ANALYSIS

### A.  Summary Judgment Standard

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

### B.     Reid's Discrimination Claim

"Title VII prohibits an employer from engaging in intentional employment discrimination - known as 'disparate treatment - on the basis of race or national origin." Mimosa Pham v. Department of Children & Families, 2014 WL 3420470, *2 (D. Conn. 2014). *See* 42 U.S.C.A. §2000e-2(a)(1). Discrimination cases based on circumstantial evidence brought pursuant to the Title VII are analyzed under the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). *See* United States v. City of New York, 717 F.3d 72, 83–84 (2d Cir.2013) (discussing application of McDonnell Douglas framework to race discrimination claim). Under this burden-shifting framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination by showing that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008). "Once the plaintiff has met this *de minimis* burden, the burden of production shifts to the

employer to proffer a legitimate, nondiscriminatory reason for the adverse action." If the defendant establishes such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination". James v. New York Racing Association, 233 F.3d 149, 154 (2d Cir.2000). *See also* McDonnell Douglas, 411 U.S. at 804; Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997).

        The County moves for summary judgment on Reid's racial discrimination claim by arguing, *inter alia*, that he is unable to establish a *prima facie* case of discrimination, since he suffered no adverse employment action. County's Memorandum of Law [26-2], Point I. Reid does not expressly respond to that argument. "[N]egative performance evaluations, formal reprimands, and counseling memoranda are not adverse employment actions for purposes of a disparate treatment claim unless accompanied by negative repercussions such as reduction in pay or an injury to a plaintiff's ability to secure future employment." Babarinsa v. Kaleida Health, 58 F. Supp. 3d 250, 260 (W.D.N.Y. 2014), aff'd, 622 Fed. App'x 36 (2d Cir. 2015) (Summary Order). *See also* Chukwuka v. City of New York, 795 F. Supp. 2d 256, 262 (S.D.N.Y. 2011), aff'd, 513 Fed. App'x 34 (2d Cir. 2013) (Summary Order) ("reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation"); Adams-Martin v. Connecticut Department of Developmental Services, 2012 WL 878306, *9 (D. Conn. 2012) ("allegedly unfair or excessive monitoring, even when accompanied by verbal reprimands, is not an adverse employment action without accompanying negative results").[3] Although Reid was

---

[3]     While an adverse employment action is an element of both Reid's discrimination and retaliation claims, "[u]nlike in the discrimination context, written warnings are . . . considered adverse actions in the

given a written warning, it was not accompanied by any demotion or adverse change in his employment status. Reid has pointed to no other adverse employment action. Therefore, I recommend that this claim be dismissed.[4]

C.      **Plaintiffs' Retaliation Claims**

Title VII prohibits employers from retaliating "against any . . . employee[ ] or applicant[] for employment . . . because he has opposed any practice made unlawful" by Title VII. 42 U.S.C. § 2000e–3(a). "Claims of retaliation under Title VII and the NYHRL are governed by the burden-shifting analysis announced in McDonnell Douglas Corp." Seale v. Madison County, 2015 WL 667531, *14 (N.D.N.Y 2015).

"Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by offering evidence that she participated in a protected activity, suffered

---

retaliation context". Tomizawa v. ADT LLC, 2015 WL 5772106, *28 (E.D.N.Y. 2015); Millea v. Metro-North Railroad Co., 658 F.3d 154, 165 (2d Cir. 2011); Babarinsa, 58 F. Supp. 3d at 264 ("[f]or purposes of a retaliation claim, an adverse action need not be an action that affects the terms and conditions of employment, such as a hiring, firing, change in benefits, reassignment or reduction in pay").

[4]      In response to the County's motion, Reid shifts to arguing that sufficient evidence exists to support a hostile work environment claim. Plaintiffs' Memorandum of Law [30-15], pp. 4-5. However, disparate treatment and hostile work environment claims are distinct. *See* Russo-Lubrano v. Brooklyn Federal Savings Bank, 2007 WL 121431, *5 (E.D.N.Y. 2007). As the County argues, the Amended Complaint does not allege (much less mention) a hostile work environment claim. County's Reply Memorandum of Law [33-1], pp. 4-5. Therefore, these arguments will not be considered. *See* Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 843 (2d Cir. 2013) ("[t]he District Court held that because the plaintiff had never asserted a claim of hostile work environment until her brief in opposition to the motion for summary judgment, it would not consider the claim. We agree . . . and will not address the merits of that late-asserted claim").

an adverse employment action, and that there was a causal connection between her engaging in the protected activity and the adverse employment action. This showing creates a presumption of retaliation, which the defendant may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action. If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" Ya-Chen Chen v. City University of New York, 805 F.3d 59, 70 (2d Cir. 2015) (*quoting* University of Texas Southwestern Medical Center v. Nassar, __U.S.__, 133 S.Ct. 2517, 2528 (2013)).

"'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive. A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan, 737 F.3d at 846. "[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment or at trial indirectly through temporal proximity." Id. at 845.

1. **Reid**

Although the County seeks dismissal of the Amended Complaint in its entirety, including Reid's claims (see County's Memorandum of Law [26-2], pp. 10, 13), it does not expressly address Reid's retaliation claim in its motion. Therefore, that claim should not be dismissed.

2.  **Palmeri and Ricotta**

The County challenges only whether Palmeri and Ricotta have established a *prima facie* case of retaliation, and the only element of the *prima facie* case it disputes is the causal connection between the protected activity and the adverse employment action. County's Memorandum of Law [26-2], pp. 10-12. It argues that plaintiffs were disciplined solely for their failure to report their sick time. Id., p. 12. In support of that argument, the County argues that Commissioner Loffreddo had no knowledge of the protected activity at the time of their termination, and argues that "[w]ithout the decision maker having such knowledge, no retaliatory intent can be found". Id.

However, even if Commissioner Loffreddo had no knowledge of Palmeri and Ricotta's protected activity, the existence "of a temporal connection" may be "enough, in and of itself . . . to permit a reasonable jury to find causation", especially in establishing a *prima facie* case. Summa v. Hofstra University, 708 F.3d 115, 127 (2d Cir. 2013). *See also* Dixon v. Metropolitan District Commission, 2017 WL 4247051, *6 (D. Conn. 2017) ("[w]hile temporal proximity alone is not sufficient for the plaintiff to carry her ultimate burden in a retaliation case . . . the case law in this Circuit suggests that temporal proximity, if sufficiently close, may be enough to satisfy the causation element for purposes of a *prima facie* case"). Here, Palmeri's and Ricotta's termination occurred four days after Rizzo and Kaun were informed that they would be witnesses for Reid at the EEOC mediation. [26-1], p. 232 of 234. That close temporal proximity is sufficient to establish a *prima facie* showing of causation. *See* Zann Kwan, 737 F.3d at 845 ("[t]he three-week period from Kwan's complaint to her termination is sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity"). Therefore, this portion of the County's motion is denied.

## CONCLUSION

For these reasons, the County's motion for summary judgment is granted to the extent that it seeks dismissal of Reid's discrimination claim, but is otherwise denied.

A conference to schedule a trial date is set for November 3, 2017 at 2:00 p.m. Counsel may appear in person or participate by telephone. For those electing to participate by telephone, dial (703)724-3100, enter access code 4000030#, and then pin 9999#.

Dated: October 16, 2017

JEREMIAH J. MCCARTHY
United States Magistrate Judge